161 So.2d 35 (1964)
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, Appellant,
v.
Albert H. HUFFORD and Maxine G. Hufford, his wife, and Bernard A. Leinfelder and Rose M. Leinfelder, his wife, Appellees.
Albert H. HUFFORD and Maxine G. Hufford, his wife, and Bernard A. Leinfelder and Rose M. Leinfelder, his wife, Appellants,
v.
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, Appellee.
Nos. E-295, E-328.
District Court of Appeal of Florida. First District.
February 11, 1964.
Rehearings Denied March 10, 1964.
*36 P.A. Pacyna, Tallahassee, for State Road Department.
W.J. Gardiner, Daytona Beach, and John E. Socash, DeLand, for Albert H. Hufford and Maxine G. Hufford, his wife, and Bernard A. Leinfelder and Rose M. Leinfelder, his wife.
STURGIS, Chief Judge.
These appeals, which grow out of the same proceeding and seek review of the same final decree, were consolidated for the hearings before and disposition by this court.
The State Road Department of Florida, hereinafter referred to as "plaintiff" or as the "Road Department," sued Mr. and Mrs. Albert H. Hufford and Mr. and Mrs. Bernard A. Leinfelder, hereinafter referred to as the "defendants" or "counterclaimants," to enjoin them from blocking the outlet of a storm sewer system which, according to the amended complaint, drains part of State Road No. 15 in the town of Orange City, Volusia County, Florida.
The complaint alleged, inter alia, that in the 1920's the Road Department constructed and at all times since has maintained said state road at said location; that the defendants own certain property in Orange City, Florida, more particularly described as Lots 1, 2, 3 and 4, First Addition to Dixson Acres, according to map recorded in the public records of Volusia County, Florida, and that said storm sewer system carries the surface waters from said state road to a point where it flows onto a low area on said Lots 3 and 4; that said storm sewer system was constructed by the Road Department in the 1920's and at all times since has been in continuous use and has been maintained, kept in repair and worked without interruption by the Road Department. On that basis the Road Department in effect claims an easement in the premises by right of prescription.
As another basis for the alleged easement the complaint alleges that on or about May 8, 1961, the Road Department, under authority of Section 337.31, Florida Statutes, F.S.A., filed in the office of the clerk of the circuit court of Volusia County a map showing the route and termini of the said storm drainage system (easement) across said lots of land of the defendants, and Paragraph 4 specifically describes same by metes and bounds; that on said date the Road Department also filed certain affidavits in said office reflecting that said drainage system had been maintained, kept in repair, and worked continuously and uninterruptedly by the plaintiff for a period of more than four years; and asserted that said acts operated to vest in the Road Department title to 7.5 feet east and west of the center line of the drainage ditch as shown by said map and described in said Paragraph 4, and that plaintiff is thereby accorded the right to enter upon said lots of the defendants for the purpose of maintaining and repairing said storm sewer system. The complaint charged that the defendants wrongfully blocked, dammed and plugged the outlet of said storm sewer system and thereby interfered with the Road Department's right to the use thereof.
Defendants moved (1) to strike certain parts of the complaint; (2) to dismiss it on grounds challenging its sufficiency to state a cause of action; and (3) for a more *37 definite statement with respect to certain phases thereof. An order denying said motions was entered August 15, 1961. Meantime the Road Department had moved for entry of a temporary injunction in the premises, which the defendants resisted by a motion to strike plaintiff's motion and an answer thereto.
Defendants then filed an answer generally denying the material allegations of the complaint, the sufficiency of which was not tested by the Road Department. Incorporated in the answer is a counterclaim seeking money damages and injunctive relief, in three counts as follows:
Count One of the counterclaim alleged that on December 17, 1956, defendants acquired title to all except Lots 19, 20 and 22 of the subdivision known as First Addition to Dixson Acres (the above mentioned Lots 1, 2, 3 and 4 being a part) and that they continue to own the same. It acknowledged that on May 8, 1961, the Road Department filed the map and affidavits as alleged by the complaint. It asserted that the claim of the Road Department as set forth in its amended complaint is wrongful and contrary to law (Note: This is clearly a conclusion of the pleader), and thereupon charged:
"That the said plaintiff, State Road Department of Florida, in and by its said Amended Complaint, and which allegations of said Amended Complaint are made a part hereof the same as if copied herewith in haec verba, wrongfully and falsely claims title and/or ownership and/or easement in and to the property and real estate described by the said plaintiff, State Road Department, in paragraph 4 of its said Amended Complaint and also described by the said map as being the property outlined in red ink which outline traverses Lots 1, 2 and 3 and part of Lot 4 of the said First Addition to Dixson Acres, all of which said Lots 1, 2, 3 and 4 are now owned by these defendants."
Thus the basis of the claim asserted by said Count One is that by filing this suit and by filing in the clerk's office the map pursuant to Section 337.31, Florida Statutes, F.S.A., the Road Department has slandered defendants' title to Lots 1, 2 and 3 and part of Lot 4 of said subdivision. Said count asserts that such overt acts constituted an implied contract on the part of the Road Department to pay the counterclaimants all damages sustained in the premises, including but not limited to (1) damages sustained by reason of their being unable to profitably sell said lots, (2) the costs expended by them in "their efforts to protect and prevent greater or more damage to their said Lots," (3) costs and attorney's fees incurred and paid in and about the defense of said suit brought by the Road Department, and (4) "consequential damages."
The second count of the counterclaim incorporated the first count thereof and further alleged that the use by the Road Department of said storm sewer was unlawful and resulted in the wrongful discharge of waters from State Road 17 across and under said Lots 1, 2, 3 and part of Lot 4, and that the spreading and flowing of said waters, "following a moderate or heavy rain," upon said State Road 17, caused irreparable damage to defendants
"* * * because said waters cross over and flow upon Lots 4, 5, 6, 11 and 12 and the street between the said Lots 4, 5, and 6 and said Lots 11 and 12, and also across, over and upon Lots 13, 27 and 28 and the easterly half of Dixson Street, all according to said map of First Addition to Dixson Acres. * *"
On the stated premise Count Two of the counterclaim charges that all of the lots owned by them in said subdivision have been reduced in value and rendered unsalable, and lays damages in like particulars as claimed by Count One.
Count Three of the counterclaim incorporated the first and second counts and prayed that the Road Department be enjoined *38 from using the storm sewer line herein involved "until and unless the plaintiff compensates the defendants by eminent domain or otherwise." Motion of the Road Department to dismiss the counterclaim for failure to state a cause of action and for lack of jurisdiction over the subject matter was denied by an order entered November 16, 1961, which order also denied its previously filed motion for a temporary injunction. We pause here to note that the assignments of error on these appeals do not bring on for review the question of the propriety of said order in denying said motion to dismiss. Therefore, our conclusions herein are not to be construed as precluding its future presentation as the parties may be advised
On November 22, 1961, a pre-trial order was entered providing: (1) That the Road Department must first prove an easement to the 15-foot strip as described in Paragraph 4 of its amended bill of complaint (this reference being to a metes and bounds description of the route and termini of the alleged storm drainage system as shown by the map filed by the Road Department with the clerk of the circuit court of Volusia County, Florida); (2) that the Road Department must also prove "an easement to the land at the terminus of the culvert for use as a specific area for the dumping of water draining through the culvert" (the reference apparently being to a culvert installed under Lots 1, 2 and 3 and part of Lot 4, aforesaid, as part of the alleged drainage system); (3) that upon failure to make such proof the defendants would be entitled to an injunction to prohibit continued use of said culvert by the Road Department; and (4) that the pre-trial order should not operate to deny any of the defenses asserted by defendants or their right to prove their counterclaims.
For some unexplained reason no further action was taken in the suit until on September 10, 1962, the Road Department addressed interrogatories to the several defendants, answers to which were filed on September 25, 1962. The next action was January 17, 1963, when the Road Department noticed the defendants for final hearing. On January 28, 1963, defendants moved for continuance thereof because of illness of one of them, the motion was granted and the hearing continued until a further date to be fixed by the court.
On February 5, 1963, the defendants addressed certain interrogatories to the plaintiff Road Department but the same were not answered within fifteen days as required by the rules. On February 27, 1963, defendants moved the court to strike out all of the pleadings of the plaintiff and/or dismiss the plaintiff's action and to enter a judgment by default against the plaintiff upon the defendants' counterclaim, because of plaintiff's said failure to object to or serve answers to said written interrogatories. On May 27, 1963, defendants filed a supplemental motion to the same effect and additionally moved the court to require the plaintiff to pay the expenses and attorney's fees incurred by defendants because of plaintiff's default. Said motions were heard on June 6, 1963, and on that date the court entered the peremptory decree appealed, finding thereby that as a matter of law the Road Department had no easement or claim to the route and termini of the storm drainage system as described in Paragraph 4 of the amended complaint, and thereupon dismissed plaintiff's amended complaint and defendants' counterclaim, both with prejudice. By said decree the court also found that by reason of the failure of the Road Department to answer said interrogatories the defendants' attorneys "W.J. Gardiner and John E. Socash are entitled to their costs and reasonable attorney's fees for the hearing had this day," and thereupon taxed the costs and assessed "reasonable attorney's fees of $50.00, to be paid to said attorneys of record for the Defendants and to each of them, within thirty (30) days of the date of this Order."
Thereafter the defendant landowners, for reasons not disclosed by the records on appeal, *39 independently appealed from said decree of June 6, 1963, which appeal is identified by our files as Case No. E-328. On that appeal the defendants, appearing in the role of appellants, assigned as error the same matters related by their cross-assignments of error in the prior appeal taken by the Road Department (Case No. E-295). The Road Department returned the compliment, so to speak, by filing cross-assignments of error in the latter appeal (Case No. 328) to the same effect as their assignments of error in the appeal which it prosecuted (Case No. E-295). The notion occurs to the author of this opinion that the geometric assumption "Quantities equal to the same quantity are equal to each other" ought to have some bearing on this awkward situation and should somehow be citeable as authority for a theorem by which to commence the process of extricating the pleaders and this court from the maze produced by these duplicitous pleadings. The author, however, being as mathematically inept as the pleadings are duplicitous, foregoes the urge to dwell at length on the proposition that the second appeal serves no useful function.
Reducing the issues on these appeals to their essentials, the points of law involved are:
(1) Whether the trial court erred in denying defendants' motions to dismiss, to strike, and for more definite statement, or either, addressed to plaintiff's amended complaint.
(2) Whether the trial court erred in peremptorily dismissing plaintiff's amended complaint with prejudice for failure of plaintiff to answer interrogatories addressed to it by defendants.
(3) Whether the trial court erred in dismissing defendants' counterclaim with prejudice, as an incident to the dismissal of plaintiff's amended bill of complaint.
(4) Whether the trial court erred in awarding costs and attorney's fees against the plaintiff to be paid to defendants' attorneys of record, based on plaintiff's failure to file objections to or answer defendants' interrogatories.
As observed, the sufficiency of the complaint to state a cause of action was tested by defendants' motion to dismiss, which was denied; and the sufficiency of the counterclaim to state a cause for relief had been tested by plaintiff's motion to dismiss, which also was denied. The motions pursuant to which the decree appealed was entered were directed exclusively to plaintiff's failure to timely answer defendants' interrogatories. The record before this court does not reveal any pleadings or proofs subsequent to denial of the motion to dismiss the amended complaint authorizing the chancellor to summarily dismiss the complaint on the ground that as a matter of law the Road Department had no easement or claim to the route and termini of the storm drainage system described therein. Similarly, there was no lawful basis for dismissal of the counterclaim. We therefore turn our attention to the question of whether it was proper at that time to dismiss the amended complaint and counterclaim with prejudice because of plaintiff's failure to answer the interrogatories addressed by defendants.
In the absence of objections to interrogatories or an order of the court varying the time prescribed for answer thereto, the answers are due within 15 days after the interrogatories are served. Rule 1.27, Florida Rules of Civil Procedure, 30 F.S.A. Failure to so serve such answers subjects the defaulting party, on motion and notice, to the penalty of having any part of any pleading filed by him stricken, or to the dismissal of his action or proceeding or any part thereof, or to entry of judgment by default against him. Rule 1.31(d), F.R.C.P. This rule, however, must be applied within the orbit of a sound judicial discretion and it is here that we are at variance with the action taken by the chancellor in this case.
We recognize that under circumstances as here existing a trial court, in the exercise of its inherent power, may and often *40 does exact prompt action and otherwise penalize a party in default under the subject rules of practice. We are aware of no instance, however, where our courts, under circumstances as here involved, have finally dismissed the action without first affording the party in default an opportunity to cure the same. Our review of the record on appeal produces the inescapable conclusion that all parties to this suit have taken their "own sweet time" in nursing it along toward hearing on the merits, which has never come about. The summary dismissal of the complaint and counterclaim was erroneous.
That part of the order fixing a fee of $50.00 each to be paid directly to the named attorneys for defendants for their services incident to plaintiff's failure to answer interrogatories herein is said by defendants to be bottomed on Rule 1.31(c), F.R.C.P. The penalty provisions of that rule, however, apply only to a situation where a party has failed to comply with a request under Rule 1.30, F.R.C.P., to admit the genuineness of a document or the truth of a matter of fact. It has no bearing on the penalties available for failure to serve answers to interrogatories, these being governed by Rule 1.31(d), F.R.C.P., which contains no penalty similar to Rule 1.31(c). We hold, therefore, that the chancellor was without authority to require the plaintiff Road Department to pay said sum of money to defendants' attorneys for the purpose stated.
In view of our conclusions we pretermit passing at this time upon defendants' assignments of error directed to the order denying their motion to dismiss and other motions addressed to the amended complaint herein, without prejudice, however, to their right to present such matter at some future appropriate time.
The decree appealed is
Reversed.
WIGGINTON and CARROLL, DONALD K., JJ., concur.